# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| | ) | |
| | ) | **Docket No. 5:16-cr-29** |
| **ALEKSANDR MUSIENKO,** | ) | |
| **Defendant.** | | |

COME NOW, Jeffrey H. Brickman, and Anthony Scheer, counsel for Defendant, Aleksandr Musienko ("Mr. Musienko"), and file this sentencing memorandum for the Court's consideration. As more fully described below, Mr. Musienko is a well-educated, highly intelligent young man, with no criminal history, and who prior to his arrest, had a passion and genuine calling for performing community service for those less fortunate in his homeland of Ukraine. Soon after his arraignment, Mr. Musienko made it clear to the Government that he fully accepted responsibility for his actions, and that his primary focus would be to provide substantial assistance to the Government. Since then, his efforts have been acknowledged in the Government's Motion for Downward Departure (Document 55), which is more fully addressed in the Defendant's Response to Government's Motion

for Downward Departure (Under Seal).

Counsel requests that the Court grant a downward variance from the resulting guideline range based upon the factors set forth in Title 18, United States Code, § 3553(a). Mr. Musienko's actions since his arrest, his prospects for full rehabilitation, and the likelihood that he will become a highly successful contributing member of Ukrainian society upon his release far exceed other defendants. Furthermore, his first four months of punishment were awaiting extradition in Korea, in highly stressful detention conditions which would not pass Constitutional muster in the United States.

## MR. MUSIENKO'S CHILDHOOD AND EDUCATION

Mr. Musienko was born in Odessa, Ukraine. He and his brother, Sergey, were primarily raised by his mother, who was in the construction business. When her employer's company was bought out, she did all she could to make ends meet. Unfortunately, it was only Mr. Musienko's mother who could adequately care for him, as his father used drugs on a regular basis, and at some point in the 1990's, left the home, never to return. Despite having no father in the house, Mr. Musienko's mother did her best to raise her two sons and strived to provide them with a warm and nurturing home life. She made enough money to put food on the table, but there were months where the three would just eat potatoes. She would supplement her income by selling shoes at a local market,

and Mr. Musienko chipped in by "joining the work force" at the age of 10, when he started selling postcards to tourists. They did not have a car and they did not travel. They lived simply. In 2000, he was able to purchase a 1974 model car using his meager savings, which he used as a "gypsy cab," shuttling people who would hail him from street corners. Such resourcefulness had always been how he supported himself and contributed to the family household.

While Mr. Musienko's mother did not have much in the way of material possessions, she did insist that her son obtain a quality education. She also exposed Mr. Musienko, at an early age, to the arts. More specifically, and as reflected in the PSR, Mr. Musienko had a proficiency for music from an early age, so much so that by the age of 13, he could play the cello, piano and guitar. Mr. Musienko would also become proficient (as in being fluent) in multiple languages, including English. It was his mastery of the English language that in all likelihood, made him so "successful" in the offense conduct that brought him before this Court.

Sadly, Mr. Musienko's father died of AIDS when Mr. Musienko was only 17. Despite the fact that he did not really have much of a relationship with his natural father, Mr. Musienko took this horribly sad chapter of his life and used it as his catalyst to become an advocate for HIV education and prevention in

his community.  The extent and effect of Mr. Musienko's efforts in this regard are more fully described, below.  When his mother subsequently remarried, Mr. Musienko welcomed his stepfather with open arms, and to this day, he still has a loving and trusting relationship with his stepfather and his mother.  Mr. Musienko describes his stepfather as his "real" father.

Mr. Musienko finished high school and obtained a bachelor's degree in 2004, in Automated Systems Software Development from Odessa State Polytechnical University in Odessa, Ukraine.  Soon after graduating from college, and with a continued thirst for knowledge, Mr. Musienko obtained two additional "specialist degrees" (the equivalent of a master's degree in the US) - the first in Financial Audit and Systems Programming (2005) and the second in Banking (2008).

## WHILE GREED LED TO HIS DEMISE, MR. MUSIENKO HAS DEMONSTRATED A GENUINE DESIRE TO APPLY HIS EDUCATION TO BETTER HIMSELF AND TO HELP OTHERS LESS FORTUNATE

Soon after obtaining his second graduate degree, Mr. Musienko started his own trade consulting business.  While he made an honest living, he soon saw his peers making much more, and much more quickly, spending their ill-gotten gains on flashy material items.  Unfortunately, Mr. Musienko's

4

temptations got the best of him. Without question, Mr. Musienko should have applied his education and proficiency in English toward lawful endeavors. And, while he certainly recognizes that he will be punished for his unlawful conduct, Mr. Musienko has spent his time in custody wisely. Aside from assisting the Government in its ongoing investigation, he has taken the time to more fully examine his purpose in life. With a history of performing countless hours of community service, he realizes that his keen intellect and mastery of the English language can and will be of great benefit to his fellow citizens in Ukraine. Over the past two years, he has spent hours each day reading books of every genre, taking correspondence courses to better his mind and soul (See Exhibits 1 & 2), and even learning how to speak Spanish as well as read Hebrew. He has completed classes in Judge Bell, make no mistake – Mr. Musienko is a unique and gifted young man, who has clearly made mistakes, but who has no intentions of turning his mind to off.

## <u>MR. MUSIENKO'S EXTRAORDINARY COMMUNITY SERVICE</u>

While there is no question of Mr. Musienko's culpability in the instant offense, it is equally clear that he has dedicated over thirteen years of his adult life trying to educate and improve the lives of a number of different segments of the Ukrainian

community.  Whether he is mentoring at risk youth, advocating for HIV prevention or helping to form the first Ukrainian LGBT community center, Mr. Musienko has demonstrated that one cannot and should not be defined by a series of poor choices on one's journey through life.  See Exhibit 3, Community Service Letters.  When reading the good character letters, you cannot help but smile and acknowledge that there is much more to Alex Musienko than any of us would have imagined.  It is important to note that Mr. Musienko's good deeds were not put into motion in anticipation of being arrested, extradited, and prosecuted thousands of miles away from the very community in which he was born and raised.  To the contrary, Mr. Musienko, without a doubt, has for years, been an integral part of his community's efforts to reach a wide variety of Ukrainian citizens starving for the ability to succeed and thrive.  In the end, it is certainly ironic that an individual who thought that one's worth was defined by how much they have in their bank account, or what kind of car they drive, was actually motivated by the opportunity and the desire to make a difference in the lives of others.

There is no question that the authors of the respective good character letters were disappointed to learn of Mr. Musienko's illegal activity.  That being said, it is equally clear that they are very hopeful that upon his return to his community, that he will be able to re-connect with these charitable organizations and resume his efforts to educate, empower and energize those who would greatly benefit from his energy and passion.

## MR. MUSIENKO'S ACCEPTANCE OF RESPONSIBILITY AND SUBSTANTIAL ASSISTANCE

Soon after his extradition to the United States, Mr. Musienko made it clear that he was not going to play cat and mouse with the Government. To the contrary, Mr. Musienko directed his counsel to immediately make contact with the Government and to begin plea negotiations. Never once did he express an interest in filing evidentiary motions or even hint that he would "put the Government to the test." Mr. Musienko's decision to enter an expeditious guilty plea and begin his cooperation not only saved the Government the expense of preparing for and going forward with a jury trial, but also enabled them with an opportunity to continue their efforts to identify and prosecute others. Within weeks, the parties were communicating on a regular basis, and after coordinating schedules with lawyers from three different states, a plea date was set. The extent of Mr. Musienko's cooperation is more fully described in the Defendant's Response to Government's Motion for Downward Departure. Counsel would ask the Court to fully consider those materials and argument, depart to the appropriate Guideline sentence, and then consider a downward variance.

## SO, WHAT IS THE APPROPRIATE PUNISHMENT?

As this Court is all too aware, it shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of Title 18, United States Code,

Section 3553(a). In doing so, this Court has great discretion. In arriving at that sentence, the Court shall consider the following:

## NATURE AND CIRCUMSTANCES OF THE CASE

There is no question that Mr. Musienko orchestrated a sophisticated fraud scheme, and that he carried out the scheme over a significant period of time. The FBI's investigation was thorough and quite impressive. That certainly played a huge role in Mr. Musienko's decision to cut his losses and elect to resolve his case with an expeditious plea.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

This Court is authorized and should consider the history and characteristics of the defendant. Mr. Musienko is thirty-seven years old, healthy, intelligent, and hard working. He was an excellent student, obviously self-driven, and has absolutely no criminal history. As discussed above, Mr. Musienko, despite his offense conduct, immersed himself in a variety of non-profit organizations, donating his energy, passion, and intellect with so many of his fellow citizens. He has not attempted to minimize his unlawful behavior. He has a very supportive family, whom he has continued to remain in contact with during the pendency of this investigation. His

wife, mother, brother and stepfather look forward to the day he is able to return home.

Mr. Musienko is incredibly remorseful for his actions and has done everything in his power to demonstrate his full acceptance of responsibility. Moreover, the very talents which helped facilitate this offense give great prospects for his ability to succeed in a legitimate lifestyle and never reoffend.

## A PORTION OF THIS SENTENCE HAS BEEN MORE SEVERE THAN NORMAL

Though sentence reductions based upon harsh pretrial confinement are allowed as a general matter, there appears to be no consensus on what underlying mechanism should be applied. Some courts have addressed the issue as a downward departure motion under U.S.S.G. §5K2.0 See e.g. U.S. v. Pressley, 345 F.3d 1205 (11th Cir. 2003); U.S. v. Dyke, 334 F.3d 736 (8th Cir. 2003); U.S. v. Carty, 264 F.3d 191 (2nd Cir. 2001). Other courts, including the Fourth Circuit, have addressed the issue as a variance under Section 3553. See e.g. U.S. v. Quattlebaum, 283 Fed. Appx. 98 (4th Cir. 2008); U.S. v. Turner, 569 F.3d 637 (7th Cir. 2009). Defendant presents this argument as a variance because the 4th Circuit has previously addressed it as such, and because the conditions of confinement are logically a feature of and affect the kind of sentence a defendant serves, as referenced 18 U.S.C. §3553.

9

Subsection 3553(a)(3) directs the court to craft a sentence with the "kinds of sentences available" in mind. While hard labor is no longer used and severe restrictions on inmates without cause is disfavored, it can safely be said that by any measure, Mr. Musienko served the first 4 months of this sentence in conditions that would not be tolerated in the United States.

He was arrested in Seoul, South Korea on December 4, 2018. The PSR sets forth the process by which he was extradited to the United States and served with the warrant on March 28. 2019. The Bureau of Prisons will calculate those 4 months as "official detention" and give him credit for the time served pursuant to 18 U.S.C. §3585, but that credit will not adequately reflect the unusually onerous nature of the time he spent in jail overseas.

Mr. Musienko was held in the Seoul Detention Center (hereinafter "SDC"), in a suburb called Anyang.[1] Like all prisoners at SDC, he was kept alone in his small cell about 23 hours every day, with 45 minutes of solitary recreation in a separate space with some fresh air. Even if cells had not been kept locked almost 24/7, there was no common area or day room in which inmates could have

---

[1] There were no witnesses available to directly attest to Mr. Musienko's facts. Counsel was, however, able to corroborate most of these conditions at SDC through news reports. In recent years, SDC has housed both the past-president, Park Geun-Hye, and the CEO of Samsung, Jay Y Lee. Sam Kim of Bloomberg News and CNN have reported on the conditions these notorious and newsworthy defendants faced, made relevant by the stark contrast to their previous lifestyle. See Exhibits 2 & 3. Those reports of conditions at SDC closely matched Mr. Musienko's description of what he experienced as related in this Memorandum.

congregated. The cell had only a toilet and a small table.  There was no bed.  Though some inmates had access to a thin pad for sleeping on the floor, Mr. Musienko had only a pair of blankets, one underneath him and another on top.  The temperature was reasonably comfortable in the early weeks, but the heat was turned off for the last month that he was in SDC and nights were particularly cold.  At least one light in the cell burned 24 hours a day.  He was allowed to use a communal shower for 10 minutes once a week, which usually did not have hot water.  He used bottles of warm water that were provided daily to "sponge bathe" as best he could the rest of the week.

He saw jail medical staff on the day that he was arrested and reported that he had chronic nasal allergies/inflammation that were flaring up.  He never received medicine for that condition and had significant head congestion for his entire stay. He was never able to see or speak to medical personal for that or any other ailment again.

There was a TV in his cell, but the prison-programming was almost entirely in Korean, which is not one of the five languages that Mr. Musienko spoke.  The only available reading materials were also exclusively in Korean, so he had virtually nothing to consume his time.  No inmates had access to a phone.  There were infrequent opportunities to talk to others because virtually no one in the jail spoke a

language he knew. There was one English-speaking detention officer who worked in another pod, and Mr. Musienko would try to get his needs addressed to him when he could convince his jailers to summon that man. Three or four times during his incarceration at SDC, however, Mr. Musienko was able to get staff to call his mother in Ukraine for a few minutes. His mother and wife traveled to Korea to visit him once. They were allowed 3 10-minute visits on consecutive days and then returned home. Over the course of 4 months, incarcerated on the other side of the world, he spoke to his family for a total of about 1 hour.

Perpetual lock down for months on end, sleeping on the floor, lights on 24 hours a day, a lack of activities to occupy the mind, no access to medical care, and almost no contact with his family are brutal conditions. Not knowing the language and only being able to speak to another human being on rare occasions made his isolation exponentially worse. _Time_ passed excruciatingly slow.

The criminal justice system metes out punishment primarily in the form of jail time, and the Sentencing Guidelines set recommendations for an amount of time based the seriousness of the conduct. Counsel contend that the 114 days which Mr. Musienko spent in Korea at the SDC represents far more punishment than the same amount of time spent in an American detention facility like the Mecklenburg County Jail. His criminal conduct in this case is fairly measured by the Guidelines, but those

4 months were arguably double or triple-time. The Bureau of Prisons would not impose such conditions, and the fact that Mr. Musienko was subjected to them is no one's fault, but it is nonetheless a "type of sentence" whose severity should be recognized by varying downward and reducing the length of his remaining sentence.

## **CONCLUSION**

This is a special case with a unique set of facts and circumstances. There is no question that the options are wide open. In varying down from the Guidelines, the Court can still arrive at a sentence that addresses the above-described factors. The Government has proposed a Guideline range whose bottom is 87 months. Counsel for Mr. Musienko has identified facts which support a Guideline minimum of 63 months. Beginning at that bottom, counsel argues here that the court should vary downward substantially. He will be a remarkably productive member of Ukrainian society when he returns. He will allocate at the sentencing hearing. All present should listen carefully to the thoughts he will share about his criminal past and the work he has done since being incarcerated to flip that script. Beyond that self-reflection, his personal history is one which demonstrates remarkable industry and talent to accomplish what he sets out to do. Even in the midst of executing this criminal scheme in which he caused a lot of harm – financial and otherwise – he had

a reflex to help others.  As detailed above, Mr. Musienko has also served hard time in pretrial detention, the likes of which very few defendants face.  Day-for-day credit for that time served will not address the way in which time stood for those 4 months.

Respectfully submitted, this 5th day of February, 2021.

_____
/s/ JEFFREY H. BRICKMAN
Georgia Bar # 080432
Attorney for the Defendant
Jeffrey H. Brickman, LLC
511 East Paces Ferry Road, NE
Atlanta, GA  30338
678-420-9382 (office)

jeff@jeffbrickmanlaw.com

_____
s/ANTHONY G. SCHEER
NC Bar # 19257
Attorney for the Defendant
Rawls, Scheer, Clary & Mingo, PLLC
1011 East Morehead Street, Suite 300
Charlotte, North Carolina 28204
704-376-3200 (office)
704-332-2716 (fax)
tscheer@rscmlaw.com

Case 5:16-cr-00029-KDB-DCK   Document 63   Filed 02/05/21   Page 15 of 15